**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Fort Myers Division**

LAUREN FRILEY,                           CASE NO:

    Plaintiff,

    vs.

CREDIT ACCEPTANCE CORPORATION,
EXPERIAN INFORMATION SOLUTIONS,
INC., and EQUIFAX INFORMATION
SERVICES, LLC.

    Defendants.

━━━━━━━━━━━━━━━━━━━━━━━/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1.    Plaintiff, LAUREN FRILEY ("Plaintiff" or "Ms. Friley") brings this action against CREDIT ACCEPTANCE CORPORATION (hereinafter "Credit Acceptance") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.    Plaintiff further alleges FCRA violations against EXPERIAN INFORMATION SOLUTIONS, LLC ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax").

3.    Plaintiff alleges as follows against Credit Acceptance, Experian, and Equifax (collectively "Defendants").

## JURISDICTION AND VENUE

4.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5.    Venue here is proper under 28 U.S.C. § 1391 because a substantial

part of the events giving rise to the claim occurred in Lee County, Florida.

## **PARTIES**

6.    Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Lee County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7.    Defendant Credit Acceptance is a corporation with its principal place of business at 25505 West 12 Mile Road, Southfield, MI 48034-8339.

8.    Credit Acceptance maintains a registered agent in this state listed as Corporation Service Company at 1201 Hays Street, Tallahassee, FL 32301.

9.    Credit Acceptance uses instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to Consumer Reporting Agencies. Trans Union, Equifax, and Experian shall be collectively referred to as the "Credit Reporting Agencies" or the "CRAs."

10.    These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which has effects on consumers and their credit reports within the state of Florida.

11.    Defendant, Experian Information Solutions, Inc. ("Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12.     Defendant, Equifax Information Services, LLC is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

## STATUTORY FRAMEWORK

### The Fair Credit Reporting Act

13.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

14.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

15.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act

seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

16.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

17.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

18.     Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

19.     The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

20.    In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."15 U.S.C.S. § 1681i(a)(4).

21.    If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall...(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

22.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

23.    If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

24.    Under the FCRA, the term "consumer report" generally refers to:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:
>
>> i.    credit or insurance to be used primarily for personal, family,

or household purposes;

ii.    employment purposes; or

iii.   any other purpose authorized under section 1681b
       of this title.

15 U.S.C. § 1681a(d)(1).

25.    The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

### *The CDIA Metro 2 Credit Reporting Standards*

26.    The Consumer Data Industry Association ("CDIA") is an international trade association, representing over 140 members involved in credit reporting, mortgage reporting, check verification, tenant and employment screening, collection services, and fraud verification services, and the CDIA is active in both federal and state legislative affairs, public relations, education, and the promulgation of industry standards.

27.    Because consumer credit reporting information is such sensitive data that has far reaching implications for most, if not all, consumers, the CDIA works together with CRAs to develop, maintain, and enhance industry-standard reporting formats and guidelines.

28.    On May 20, 2015, Ohio Attorney General Mike DeWine and thirty (30) other state attorneys general announced a national settlement ("The Settlement") with the CRAs. *Attorney General DeWine Announces Major National Settlement with Credit Reporting Agencies*, Ohio Att'y Gen. (May 20, 2015), https://www.ohioattorneygeneral.gov/Media/News-Releases/May-

2015/Attorney-General-DeWine-Announces-Major-National-S , (last visited October 6, 2022).

29.     The Settlement implemented numerous reporting standards, including the Metro 2, data reporting format. *See* Assurance of Voluntary Compliance/Assurance of Voluntary Discontinuance, *In the Matter of Equifax Info. Servs. L.L.C., Experian Info. Sols., Inc., and TransUnion L.L.C.,* § IV (E)(2)(May 20, 2015).

30.     To further assist CRAs and data furnishers with performing their due diligence and reporting accurate, complete, and timely data, in satisfaction of the FCRA's legal requirements, the CDIA offers extensive training, education, and support to CRAs and data furnishers.

31.     The CDIA's extensive training and support offerings include FCRA certification programs for both CRAs and data furnishers, to assist each in maintaining compliance with FCRA regulations.

32.     If the standardized methods proscribed by the CDIA are not followed, FCRA certification can be revoked for failure to adhere to such standards.

33.     In cooperation with the major CRAs, CDIA publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. See, https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ (last accessed October 6, 2022).

34.     The Metro 2 Format Task Force is comprised of representatives from Equifax, Experian, Innovis, and TransUnion, and is supported by the CDIA. Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards. *See* https://www.cdiaonline.org/metro-2/ *(*last visited April 2, 2022).

35.     To ensure compliance with the FCRA, and in furtherance of its mission, the Metro 2 Format Task Force has developed an industry standard (the "Metro2 standard") for reporting consumer accounts that is "designed to standardize a wide range of credit information while complying with federal laws and regulations for credit reporting." *Id.*

36.     15 U.S.C. § 1681s-2(a)(2) requires furnishers of information to regularly correct and update the information they previously provided to consumer reporting agencies, to make sure the information is complete and accurate. Similarly, upon receiving notice from a consumer reporting agency of a consumer's dispute, 15 U.S.C. § 1681s-2(b)(1) requires furnishers of information to conduct reasonable investigations of a consumer's dispute of the completeness or accuracy of any information provided by the furnisher of information to a consumer reporting agency.

37.     15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information concerning the individual about whom a report relates. Similarly, 15 U.S.C. § 1681i(a)(1) requires consumer reporting agencies to conduct reasonable

reinvestigations of a consumer's dispute of the completeness or accuracy of any item of information contained in the consumer's file.

38.     The uniform adoption and implementation of the Metro 2 standards is the primary vehicle by which CRAs and furnishers ensure compliance with their respective duties to maintain complete and accurate information under the FCRA.

39.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit risk scoring.

40.     The Metro 2 standards are documented in the Credit Reporting Resource Guide ("CRRG"), an industry-standard publication produced and distributed by the CDIA.

41.     As an integral aspect of its duties under the FCRA, Credit Acceptance is required to have in place adequate and reasonable policies and procedures for handling and investigation of disputed information.

42.     At all times relevant hereto, Credit Acceptance adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

43.     Furthermore, at all times relevant hereto, Credit Acceptance incorporated, warranted, and or represented to all CRAs to which they reported that each of them had adopted and implemented the Metro 2 format for their reporting of consumer data, and would otherwise comply with Metro 2 and CDIA guidelines in their reporting of consumer information.

44.     As an integral aspect of its duties under the FCRA, Experian is required to have in place adequate and reasonable policies and procedures to assure the

maximum possible accuracy of information concerning individuals about whom Trans Union produces reports; the requirement to maintain reasonable procedures extends to Trans Union's handling and reinvestigation of disputed information.

45.    At all times relevant hereto, Experian adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

46.    At all times relevant hereto, Experian has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

47.    As an integral aspect of its duties under the FCRA, Equifax is required to have in place adequate and reasonable policies and procedures to assure the maximum possible accuracy of information concerning individuals about whom Equifax produces reports; the requirement to maintain reasonable procedures extends to Equifax's handling and reinvestigation of disputed information.

48.    At all times relevant hereto, Equifax adopted and implemented the Metro 2 format as a means of fulfilling its duties under the FCRA.

49.    At all times relevant hereto, Equifax has required all entities to whom it grants consumer information reporting rights and access to adhere to the Metro 2 reporting guidelines as a condition of such ability and access.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

50.    The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRA may report the results

of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

51.     To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian (the three major "National CRAs"), along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

52.     The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/ (last accessed October 6, 2022).

53.     The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. *Id*.

54.     The National CRAs, provide notice of a consumer's dispute to data furnishers in the ACDV format, and forward the ACDV to the furnisher through e-OSCAR.

55.     If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but

with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

56.    The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See *https://www.e-oscar.org/getting-started/about-us* (last accessed October 6, 2022).

57.    Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

58.    Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and states that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See, https://www.transunion.com/data-reporting/support-teams (last accessed October 6, 2022).

### *The Underlying Debt – Auto Loan with Credit Acceptance*

59.    Some of the factual allegations in this Complaint are directly related to a closed debt collection lawsuit and subsequent garnishment in Franklin County, OH filed by Credit Acceptance, against Ms. Friley and her ex-husband, Michael J. Friley for a car loan; *Credit Acceptance Corp, v. Michael J. Friley and Lauren Friley*, Case No. 2017-CVF-004882, *Franklin County Municipal Court*. (hereinafter "State Court Action" or "State Action").

60.     Ms. Friley was a co-signer on the car loan that is the subject of the State Court Action.

61.     Based on information and belief, Ms. Friley's ex-husband stopped making payments on the vehicle which led to it being the subject of the State Court action and garnishing of Mr. Friley's wages.

*Ms. Friley disputes the Credit Acceptance Account to the CRAs*

62.     According to the online docket of the State Court Action, the final "Disbursement of a civil wage garnishment" was made on June 4, 2018. *See* Composite Exhibit "A."

63.     Additionally, the "FINANCIAL SUMMARY" section of the docket states the remaining balance is $0.

64.     After the final payment was made to reflect a $0 balance, Ms. Friley noticed her credit files with Trans Union, Experian, and Equifax were showing an outstanding balance remaining of $4,582.

65.     After several disputes with Trans Union, the Credit Acceptance account was deleted from that agency's file for Ms. Friley.

66.     Based on information and belief, Ms. Friley has disputed the reporting by mail approximately four times to Experian and Equifax respectively, but the inaccurate past due balance of $4,582 remains on both of her credit files.

67.     Ms. Friley also sent several email disputes to Experian and Equifax, but the inaccurate past due balance of $4,582 remains.

68.    After several written disputes and online disputes Ms. Friley tried to have the information corrected once again by sending a written dispute to the CRAs on or about August 30, 2022. A true and correct copy of the August 30, 2022, disputes to the CRAs are attached hereto as part of Composite Exhibit "A."

69.    The August 30, 2022, Disputes contained screenshots of the State Court Action and directed Experian and Equifax to the $0 balance. *Id*.

70.    While she was awaiting the results of the August 30, 2022, disputes Ms. Friley also disputed the reporting by phone on September 7, 2022, by calling Equifax and Experian respectively.

71.    Ms. Friley spoke with an Equifax representative who identified herself as Belle and advised Ms. Friley it will take up to 30 days to receive a decision by mail; her confirmation number was 2250539833.

72.    Ms. Friley tried to speak with an Experian representative the same day but could not connect with a live person.

73.    On or about September 12, 2022, Equifax sent Ms. Friley the reinvestigation results of her August 30, 2022, dispute, which verified the inaccurate past due balance of $4,582. A true and correct copy of Equifax's reinvestigation results are attached hereto as Exhibit "B."

74.    Based on information and belief, Experian has also verified the Credit Acceptance account information of the $4,582 past due balance.

75.    Since Ms. Friley did not receive reinvestigation results from Experian, she obtained an updated disclosure for October 2022, which stated in the

"Reinvestigation Info" section "[t]his item was updated from the processing of your dispute in August 2022."

76. Upon receiving the August 30, 2022, Disputes, the CRAs relayed that correspondence to Credit Acceptance, who failed to conduct a reasonable investigation, and then furnished inaccurate information to the CRAs.

77. Even after receiving the August 30, 2022, disputes with details describing why the reporting was inaccurate, the CRAs relayed that correspondence to Credit Acceptance, who failed conduct a reasonable investigation and once again furnished inaccurate information back to the CRAs.

78. Credit Acceptance has been furnishing negative, inaccurate, and/or misleading information (hereinafter "Inaccurate Information") regarding Plaintiff's joint auto loan account to the CRAs.

79. Relatedly, the CRAs reliance on Credit Acceptance has caused the Inaccurate Information to be sent to third parties who have viewed Plaintiff's credit reports when evaluating her credit worthiness.

80. The dates when the Inaccurate Information was viewed are reflected as "Regular Inquiries" or "Hard Inquiries" on Plaintiff's consumer disclosures following the Initial and Second Dispute.

81. One or more of the enumerated "Regular Inquiries" and/or "Hard Inquiries" have resulted in damages to Plaintiff in multiple forms, including economic and non-economic harm.

82.     Unless and until the Inaccurate Information is no longer a factor in Plaintiff being denied credit, being granted credit at increased rates, losing the opportunity to benefit from credit, or Plaintiff being forced to procure a co-signer to be granted any credit under any terms, these economic losses will continue.

### *Plaintiff's Injuries-In-Fact under the FCRA*

83.     Defendants' actions and omissions have resulted in Ms. Friley having a decreased credit score, which resulted in her paying increased interest on any approved credit applications following any of her disputes.

84.     This negative effect on Plaintiff's credit score subjected her to either being denied credit or receiving less favorable credit terms than she otherwise would when she applied for credit after submitting her written disputes.

85.     Further, courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *Binns v. Ocwen Loan Servicing, LLC*, No. 14-

01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *Rothman v. U.S. Bank Nat'l Ass'n,* No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

86.    Moreover, Ms. Friley was denied a job based on Credit Acceptance's reporting of the Credit Acceptance account being inaccurately reported.

87.    Additionally, Ms. Friley had to make a larger down payment on a recent auto loan and was charged a higher interest rate as well.

## COUNT I – VIOLATIONS OF 15U.S.C. §1681s-2(b)
## AGAINST CREDIT ACCEPTANCE FOR DISPUTE(S) TO EXPERIAN

88.    Plaintiff incorporates by reference her allegations in Paragraphs 1, 3 – 10, and 13 – 87 above as if fully set forth herein.

89.     Credit Acceptance is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

90.     Credit Acceptance violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by Experian.

91.     Additionally, Credit Acceptance violated §1681s-2(b) by failing to accurately respond Plaintiff's disputes forwarded by Experian concerning the joint auto loan account.

92.     Specifically, Credit Acceptance reported an outstanding balance when there is currently a $0 balance.

93.     As a result of Credit Acceptance's violations of the FCRA, Plaintiff has been damaged.

94.     Plaintiff's damages include damages include emotional distress associated with the Inaccurate Information not being corrected, credit denials, credit being granted at increased rates as the result of the Inaccurate Information being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

95.     Credit Acceptance negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

96.     Additionally, Credit Acceptance committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

97.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against TBOM and Credit Acceptance in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST CREDIT ACCEPTANCE FOR DISPUTE(S) TO EQUIFAX

98.    Plaintiff incorporates by reference her allegations in Paragraphs 1, 3 – 10, and 13 – 87 above as if fully set forth herein.

99.    Credit Acceptance is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

100.    Credit Acceptance violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by Equifax.

101.    Additionally, Credit Acceptance violated §1681s-2(b) by failing to accurately respond Plaintiff's disputes forwarded by Equifax concerning the joint auto loan account.

102.    As a result of Credit Acceptance's violations of the FCRA, Plaintiff has been damaged.

103.    Plaintiff's damages include damages include emotional distress associated with the Inaccurate Information not being corrected, credit denials,

credit being granted at increased rates as the result of the Inaccurate Information being viewed by credit grantors, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

104.     Credit Acceptance negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

105.     Additionally, Credit Acceptance committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

106.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Credit Acceptance in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

107.     Plaintiff incorporates by reference his allegations in paragraphs 2 - 6, 11, 13 – 46, 50 – 58, 64, 66 – 70, 72, and 74 - 88 above as if fully set forth herein.

108.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

109.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

110.    During the relevant time frame, Experian received Plaintiff's Initial Dispute and regarding the accuracy of the account reported by TBOM on Plaintiff's credit report.

111.    Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

112.    Additionally, Experian unreasonably relied on information provided by Credit Acceptance, when readily verifiable information that Plaintiff provided in her dispute(s) placed Experian on notice that Credit Acceptance's information was inaccurate.

113.    Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

114.    In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

115.    As a result of Experian's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT IV– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

116.     Plaintiff incorporates by reference her allegations in paragraphs 2 - 6, 11, 13 – 46, 50 – 58, 64, 66 – 70, 72, and 74 - 88 above as if fully set forth herein.

117.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

118.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

119.     During the relevant time frame, Experian received Plaintiff's dsiputes regarding the accuracy of the account reported by Credit Acceptance on Plaintiff's credit report.

120.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

121.     Any users of credit reports that viewed the Credit Acceptance account saw the Inaccurate Information.

122.     Even after Plaintiff's disputes, the Credit Acceptance account is still being reported with the Inaccurate Information.

123. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

124. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

125. As a result of Experian's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX FOR FIRST DISPUTE

126. Plaintiff incorporates by reference her allegations in paragraphs 2 – 6, 12 – 43, 47 -58, 64 – 71, 73, and 76 – 87 as if fully set forth herein.

127. At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

128.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

129.    During the relevant time frame, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the account reported by Credit Acceptance on Plaintiff's credit report.

130.    Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

131.    Additionally, Equifax unreasonably relied on information provided by Credit Acceptance, when readily verifiable information that Plaintiff provided in her disputes placed Equifax on notice that Credit Acceptance's information was inaccurate.

132.    Even after Plaintiff's disputes the Credit Acceptance account is still being reported with the Inaccurate Information.

133.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

134.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

135.    As a result of Equifax's violations of the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from

credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

### COUNT VI– VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

136.    Plaintiff incorporates by reference her allegations in paragraphs 2 – 6, 12 – 43, 47 -58, 64 – 71, 73, and 76 – 87 as if fully set forth herein.

137.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

138.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

139.    During the relevant time frame, Equifax received Plaintiff's disputes regarding the accuracy of the account reported by Credit Acceptance on Plaintiff's credit report.

140.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

141.    Any users of credit reports that viewed the joint auto loan account saw the Inaccurate Information.

142.     Even after Plaintiff's written dispute(s), the TBOM account is still being reported with the Inaccurate Information.

143.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

144.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

145.     As a result of Equifax's failures to comply with the FCRA, Plaintiff suffered mental and emotional distress associated with inaccurate information in her credit file, credit denials, the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: Actual damages in an amount to be determined by the jury; Punitive damages in an amount to be determined by the jury; Statutory damages as determined by the Court; Attorneys' fees, litigation expenses and costs; Interest as permitted by law; and Such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

146.     Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**
**_/s/ Kevin Rajabalee, Esq._**
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: (844) 921-1022
eiman@sharminlaw.com
_Attorney for Plaintiff_